No. 17,769.

MARION HARDEN BROWN, JR. *v.* PEOPLE OF THE STATE OF COLORADO.
(291 P. [2d] 680)

Decided December 5, 1955. Rehearing denied January 16, 1956.

Mr. Isaac Mellman, Mr. Gerald N. Mellman, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, for defendant in error.

*En Banc.*

Mr. Justice Clark delivered the opinion of the Court.

THIS is a habeas corpus proceeding. The petitioner is defendant in a criminal action pending in the district court wherein he is charged in the information with the crime of murder. The cause was once tried resulting in a jury verdict finding the defendant guilty as charged and recommending the death penalty. Upon review by this Court, because of grievous and prejudicial error appearing in the record of the trial proceeding, the judgment was reversed and the case remanded with direction that a new trial be had. *Brown v. People,* 130 Colo. 77, 273 P. (2d) P128.

The cause came regularly on for retrial on May 2, 1955. All of that day and until the afternoon of the next day was consumed in the examination and selection of a jury which was accepted by both sides after each had exercised ten peremptory challenges. Thereupon the jury was sworn to try the issues in the case and recess was had until the morning of Wednesday, May 4th. Prior to the hour fixed for convening of Court on that date, the trial judge, having been informed of conduct on the part of the division clerk, which, to the judge, seemed irregular, conducted a personal investigation from which he became convinced beyond all reasonable doubt that his division clerk, at the suggestion of a superior officer in the clerical department at the commencement of the selection of the jury, had willfully and deliberately placed the ticket bearing the name of one of the veniremen on that panel in a position in the jury box where it would not be drawn. Although the venireman was present and available for drawing and service upon said jury, his name, because of the action of the division clerk, as aforesaid, could not have been drawn, was not drawn, and he did not become available for voir dire examination or service, notwithstanding the duty of the clerk to draw from his box the names of prospective jurors at random and without selection.

The trial judge, having established the existence of such irregularity to his complete satisfaction, then called

into chambers counsel representing the defendant as well as those from the district attorney's office representing the people, and disclosed to them the situation which he had discovered and investigated. After a full discussion of the matter all counsel announced themselves as willing to waive the irregularity and to proceed with the trial before the jury then impanelled, except that counsel representing the defendant expressed doubt of their legal authority to so waive. The trial judge, also being doubtful of the authority of counsel for defendant to waive under such circumstances, being certain of his facts and deeming the irregularity to be of an important and grave character, proceeded to open court and on his own motion directed a mistrial, discharged the jury and remanded the defendant to the custody of the sheriff.

Shortly after the occurrence of the events above referred to, defendant Brown, upon presentation of petition to the district court, procured a writ of habeas corpus returnable upon the 16th day of May, 1955. By his petition defendant prayed for his discharge because of alleged former jeopardy in that the jury had been selected and sworn for his second trial, and that the action of the court in declaring mistrial and discharging the jury was unnecessary and improper. Upon return of the writ, hearing was had on May 31, 1955, before the same judge who had presided in the proceedings first above related.

Following the conclusion of the hearing and presentation of arguments on petition for habeas corpus the trial judge entered extensive findings and judgment, the same being rather in the nature of an opinion, in which he recites all of the circumstances above related; dismissed the writ of habeas corpus, and remanded the petitioner to the custody of the sheriff.

To better understand the seriousness with which the trial judge regarded the problem before him we refer rather extensively to his findings and opinion, quoting

parts and summarizing others. After relating the factual background the trial court said:

"We conceive the sole question to be determined now, under this Writ, to be whether the discharge of the jury under the circumstances above recited was legally justified."

The court answered its own question affirmatively upon the basis that courts "have authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of justice would otherwise be defeated." After a review of the legal history pertaining to the rights of courts to discharge juries, reference was made to an opinion by Mr. Justice Story, *U.S. v. Perez*, 22 U.S. 256 (9 Wheat. 579), and his quotation therefrom is worthy of repetition here:

"We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, *or the ends of public justice would be defeated.* They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But after all, they have the right to order the discharge; *and the security which the public have for the faithful, sound and conscientious exercise of this discretion rests in this, as in other uses, upon the responsibility of the judge, under their oaths of office.*" (Emphasis supplied by the trial court.)

The trial judge then gave his views in manner following:

"It is contemplated by our laws that when a jury panel

is assigned to the trial of a cause, the trial jury shall be drawn from that panel. In this case the jury was not selected from the panel, but rather from the panel, less *one*. That one was not excused thru regular and lawful channels. To all intent and purpose of trial counsel and the Judge, his name was in the box; he was present in the Court Room waiting to be called. By the act of an officer of the Court, in the words of the above quoted decision, that panel was thus corrupted. It was not as the law provides it shall be. Be it one juror whose name is surreptitiously removed from the box, or be it twenty-five, the principle remains the same." (Emphasis supplied by the trial court.)

The argument before this Court is based upon four grounds in each of which it is contended by counsel on behalf of defendant that the ruling of the trial court was erroneous. They are as follows:

(1) That defendant was placed in jeopardy upon the selection and swearing of the jury;

(2) That there was no legal justification for declaring a mistrial nor necessity for the discharge of the jury;

(3) That the plea of former jeopardy is available to the defendant; and

(4) That habeas corpus is a proper remedy.

The first, third and fourth grounds are more or less technical in nature, but the second ground goes to the very substance of the matter and requires a decision on the merits. Although we have considered the arguments and contentions of counsel on the other three grounds, we prefer to base our conclusions and decision herein on the second.

The trial court hit the nail squarely on the head when he posed the query: Was the order of mistrial *legally justified?* If legally justified, jeopardy did not occur. Although counsel for petitioner now assert that they waived the irregularity called to their attention by the trial judge, and we discuss the matter on that basis, the record indicates that defendant's waiver was more or

less with reservations, counsel then expressing themselves as doubtful of their authority to waive such defect. Any doubt counsel may have entertained at the time of conference in the court's chambers before the order of mistrial was entered as to their right to waive the irregularity, has in the meantime been removed and they now assert that there is no question whatsoever but that the irregularity was such that it could have been waived and that it was waived by them on behalf of the defendant. Their present contention is that where the irregularity was one that could be waived, and actually was waived, there remained no legal justification for the order of mistrial. Is not such a contention the equivalent of now saying that to be *legally justified* a court may not order a mistrial except under circumstances where its refusal to do so would constitute prejudicial error? Would not such a construction place upon the court the burden of first determining as a matter of law whether vital error did occur as a result of its action? Such, it seems to us, is the effect of the argument now presented by counsel on behalf of petitioner. If put upon the basis of whether error as a matter of law would result from the ruling pertaining to mistrial, then where does "discretion" come into the picture? If the legal justification must be pinpointed to a determination of the right as a matter of law, then there can be no discretion. The elements entering into the question of when a trial court is justified in declaring a mistrial are not so specific and circumscribed that the issue may be decided as a matter of law nor are there established standards in adequate detail to enable the court so to do. Nor do the decisions of the appellate courts of this jurisdiction, nor of others, require such exacting fineness, they being content to leave the matter to the sound discretion of the trial court. Its determination will not be disturbed on review, unless it clearly appears that its discretion has been abused, and, as held by this Court, with resulting prejudice to petitioner, or under such circumstances that it may be

568

said that it amounts to a denial of justice. *Kelly v. People,* 121 Colo. 243, 250, 215 P. (2d) 336.

 In an action where, as in this case, counsel for defendant contended that the discharge of the jury was improper unless the record shows a lawful reason therefor, the supreme court of Illinois in *People v. Simos,* 345 Ill. 226, 178 N.E. 188, 190, said:

"Counsel for plaintiffs in error argues that where a record shows that the defendant was put upon trial and the jury was sworn to try the cause, the subsequent discharge of the jury before verdict entitled the defendant to be discharged unless the record also shows a lawful reason for such discharge of jury. This is not the rule. It has long been recognized by this court and elsewhere that a court of justice is invested with the authority to discharge a jury from giving any verdict whenever in the court's opinion there is manifest necessity for such act or the ends of public justice would otherwise be defeated, and that such is within the discretion of the trial court and is not subject to review in the absence of abuse of discretion. (Citing cases.) The fact that a juror was withdrawn and a mistrial declared is not of itself sufficient to indicate jeopardy, since a court of review will not presume an abuse of discretion on the part of the trial court."

 Counsel for defendant contend that the Kelly case and the Simos case are not in point because the facts are different. Granting that this is true, yet the rule of law laid down in both instances fits exactly the situation here presented. Consider for a moment the term "legal justification." What is it? To be legally justified there must be a reasonable objective sought and a substantial purpose attained. The granting of a mistrial would not be legally justified because of some whimsical notion or frivolous impulse, such as, for instance, that some member of the jury died his hair or wore an artificial limb. While the cause for the order must be substantial and real, it need not be vital. It need only be

such as could affect, or might in some way or manner be considered as interfering with, retarding, or influencing, to even a slight degree, the administration of honest, fair, even-handed justice to either, both, or any, of the parties to the proceeding. When it appears to the chancellor that such an irregularity prevails and when in the exercise of his sincere judgment he declares a mistrial, it must be said that he has fairly exercised his judicial discretion and that his action is properly and legally justified. In short, when any irregularity worthy of notice and capable of correction appears, a declaration of mistrial is legally justified. Such situations manifest themselves in many and devious ways impossible to enumerate. 53 American Jurisprudence, section 971, page 682.

And so in the instant case, where it is the admitted fact that the division clerk surreptitiously placed the card bearing the name of a venireman in position so that it would not and could not be drawn, it becomes immediately apparent that such act created an irregularity, the consequences of which could not well be appraised. They might have been of little moment and yet it is clearly conceivable that they might have been grave and serious. Who is there to say that had the name of that prospective juror not been withheld he would not have been drawn? Or that having been drawn the whole makeup of the jury finally selected would have been changed? Even the manner of exercise of peremptory challenges may have been vastly different or the number used may have reached the number allowable. The judge, or any other individual, had no way of knowing. All he knew positively was that a dire irregularity had intruded into the routine of proper jury selection. Its result no man could foresee. Whether fatal legal error might result from his action was not the question, but what should be done in exercise of fair and judicious discretion was the problem with which he was confronted. Whether he employed wisdom in exercising his discretion we are

not even called upon to say, but we do say positively that, all circumstances considered, he did not abuse his discretion.

The judgment is affirmed.