## No. 27515

### The People of the State of Colorado v. Ronald Lee Ferrell

(613 P.2d 324)

Decided June 23, 1980.                    Rehearing denied July 21, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, William Morris, Assistant Attorney General, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Shelley Gilman, Deputy, for defendant-appellant.

*En Banc.*

CHIEF JUSTICE HODGES delivered the opinion of the Court.

The defendant was convicted of conspiracy to commit first-degree murder and first-degree murder. He was sentenced to death. On appeal, he challenged the constitutionality of the death penalty statute under which he was sentenced. Section 16-11-103, C.R.S. 1973 (1978 Repl. Vol. 8). He also asserted several allegations of reversible error. We subsequently declared this death penalty statute unconstitutional in *People v. District Court,* 196 Colo. 401, 586 P.2d 31 (1978). On a temporary remand, we then ordered the trial court to resentence the defendant to life imprisonment. Having reviewed the defendant's remaining issues on appeal, we uphold his convictions and therefore affirm the trial court's judgment.

The defendant and two companions were associated with the decedent in a series of illicit drug transactions. The decedent had supplied the defendant with a large quantity of amphetamines, which was thereafter sold in Kansas by one Carlos Allen, an associate of the defendant. The defendant, together with Carlos Allen and Richard Hisle, planned to meet in El

Paso, Texas, after the sale in Kansas to participate in the theft of a large quantity of marijuana and cocaine from a man named "John." The decedent learned of the scheme and warned John about it. As a result, the three men were unable to carry out the theft.

On their return trip to Colorado, the three men discussed the possibility of murdering the decedent and thereafter agreed on a plan. They informed the decedent that they had been able to secure drugs in Texas and told him to meet them in Woodland Park, which is several miles west of Colorado Springs. The defendant and Carlos Allen took the decedent to a remote area where the drugs were purportedly hidden. There, the defendant shot the decedent first in the back, a second time as the decedent turned and fell, and finally in the head as the decedent was lying on the ground.

## I.

The defendant's first contention is that the trial court erred in excluding testimony that the decedent had severely beaten another man several months prior to his death and that the defendant knew of this incident prior to the homicide. Defense counsel had argued that the defendant feared the decedent and that the killing was in self-defense.

A defendant is entitled to present evidence of a prior violent act of a victim only if (1) the defendant contends that he acted in self-defense and there is competent evidence to support the contention, (2) either the act occurred or defendant became aware of its occurrence within a reasonable time of the homicide, and (3) the defendant knew of the victim's prior violence at the time of the homicide. *People v. Burress,* 183 Colo. 146, 515 P.2d 460 (1973); *Ballay v. People,* 160 Colo. 309, 419 P.2d 446 (1966). Although there was evidence that the defendant knew of the decedent's prior violent act at the time of the homicide, there was no evidence to support the defendant's contention that he killed the decedent in self-defense.

In order to justify a theory of self-defense, where the defendant used deadly force, he must have reasonably believed that a lesser degree of force was inadequate and that he or another person was in imminent danger of being killed or of receiving great bodily harm. Section 18-1-704(2)(a), C.R.S. 1973 (1978 Repl. Vol. 8). There was no evidence introduced at trial to indicate that either the defendant or Allen was in imminent danger of harm at the time the defendant shot the victim three times in the remote area outside Woodland Park. In fact, the third and fatal shot to the head was fired as the decedent was lying helpless on the ground.

## II.

The defendant also asserts that certain statements made by the prosecutor in closing argument constituted reversible error and that a mistrial motion should have been granted. The first involved a comment to

the jurors indicating that they should retaliate against the defendant. The prosecutor's argument should be restricted to the evidence and reasonable inferences to be drawn therefrom on the issue of whether guilt is proven beyond a reasonable doubt. The defendant's counsel used strong and colorful language in his closing argument, characterizing the situation as "kill or be killed, if I may call it the law of the jungle." However, the prosecutor's response exceeded the bounds of proper argument and therefore cannot be condoned.

■ In *People v. Elliston,* 181 Colo. 118, 123, 508 P.2d 379 (1973), we held:

"The granting or denial of a motion for a mistrial is within the sound discretion of the trial judge. In *Maes v. District Court,* 180 Colo. 169, 503 P.2d 621 (1972), we recently reaffirmed the standards to be applied by trial judges when deciding whether such a motion should be granted. The trial court's determination will not be disturbed on review unless it is apparent that the court abused its discretion. *Barriner v. District Court,* 174 Colo. 447, 484 P.2d 774 (1971); *Falgout v. People,* 170 Colo. 32, 459 P.2d 572 (1969); and *Maisel v. People,* 166 Colo. 161, 442 P.2d 399 (1968). As stated in *Falgout v. People, supra,* this standard of review is founded on the principle that the trial court is in a better position than the appellate court to evaluate the effect of any alleged irregularity upon the jury's determination."

Again, we emphasize that the trial court was in the best position to determine the impact of the prosecutor's improper argument upon the jury. Under the facts of this case, we hold that the trial court did not abuse its discretion in denying the motion for mistrial.

■ As to the district attorney's second comment in closing argument, defense counsel neither objected nor raised it as error in his motion for new trial. Therefore, this issue was not properly preserved for appeal.

### III.

■ The defendant finally contends that certain expert testimony regarding the entrance wounds based upon a hypothetical question was inadmissible. It is asserted that the expert's testimony was based upon the opinion of another expert. Such testimony is not admissible. *Herness v. Goodrich,* 29 Colo. App. 322, 483 P.2d 412 (1971). *See also People v. McCormick,* 181 Colo. 162, 508 P.2d 1270 (1973). Although the district attorney's question was inartfully stated, the answer of the expert makes it clear that his testimony was based not upon the opinion of the other expert, but upon the actual tests which were performed as the basis for the other expert's opinion. These tests constituted direct evidence upon which he could give his independent opinion. *See Fry Roofing Company v. State Department of Health Air Pollution Variance Board,* 191 Colo. 463, 553 P.2d 800 (1976).

Judgment affirmed.

JUSTICE ERICKSON, JUSTICE DUBOFSKY and JUSTICE QUINN dissent.


JUSTICE QUINN dissenting:

I respectfully dissent. I believe that the prosecutor's rebuttal argument to the jury was so inflammatory and so deliberately calculated to appeal to the passions of the jury as to render the defendant's conviction an egregious violation of fundamental fairness.

In the course of a very brief rebuttal argument the prosecutor stated to the jury:

"Your job is not to be a cheerleader, your job is to say 'All right, Andy Fullbright, Ron Ferrell, we don't approve of your jungle, we don't approve of your retaliation with each other, *I don't care which one got the other the other one gets it from us.*'" (Emphasis added.)

Defense counsel moved for a mistrial and the motion was denied.

The People attempt to justify the rebuttal argument as a legitimate response to defense counsel's allusion in closing argument to the jungle-life, kill-or-be-killed lifestyle of the decedent and defendant. Defense counsel's argument was made in the context of the court's instruction on self-defense and the defendant's right to act upon the appearance that Fullbright was trying to kill him. The prosecutor's rebuttal argument was not a legitimate response to defense counsel's argument on self-defense. On the contrary, in a capital case such as this, it was nothing short of an exhortation to mob-retribution and deprived the defendant of a fair trial.

Although the distinction between undignified or intemperate argument on the one hand, and hard but fair advocacy on the other, is not subject to any litmus type of analysis, it is basic to our criminal justice system that a prosecutor, while free to strike hard blows, "is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935). "It is as much his duty to refrain from improper methods calculated to produce a wrong conviction, as it is to use every legitimate means to bring about a just one." *Id.; see also, People v. Walker,* 180 Colo. 184, 504 P.2d 1098 (1973).

The prosecutor should not and must not use argument calculated to influence the passions or prejudices of the jury. *ABA Standards Relating to the Prosecution Function* § 5.8(c). Likewise, the prosecutor must refrain from argument which tends to divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law. *ABA Standards Relating to the Prosecution Function* § 5.8(d).

Although the majority opinion relies on *People v. Elliston,* 181 Colo. 118, 508 P.2d 379 (1973), in deferring to the discretion of the trial court, I rely on the following statement of this court from that same case to point up why the defendant's conviction should not pass scrutiny under this record:

"This court has repeatedly stated that the duty of a prosecutor is not merely to convict, but to see that justice is done by seeking the truth of the matter. In the type of case tried here, a prosecutor must be particularly careful in his conduct to ensure that the jury tries the case solely on the basis of the *facts* presented to them. The prosecutor's improper statements to the jury indicate a misplaced zeal to 'win' the case, a lack of self-control, and either a lack of knowledge of — or worse, an indifference to — elementary principles of fairness and legalities." 181 Colo. at 126, 508 P.2d at 383.

As in *People v. Walker, supra,* the district attorney here, "in his over-zealous effort to convict, prevented the defendant from having a fair trial." 180 Colo. at 190, 504 P.2d at 1101. "A prosecutor's duty is to seek justice, not merely to convict." *Id.*

The goal of our adversary system does not end with reliable factfinding or protection of the innocent from unjust convictions, high as these objectives are. The primary goal of our adversary system is to "preserve the integrity of society itself . . . [by] keeping sound and wholesome the procedures by which society visits its condemnation on an erring member." *ABA Standards Relating to the Prosecution Function and the Defense Function,* Introduction at 5 (1971), quoting Fuller, *The Adversary System, Talks on American Law* 30, 35 (Berman ed. 1960).

In a case such as this the proper inquiry is not merely whether there was enough evidence to support the result. Rather, the proper inquiry is whether the error likely influenced the result or affected the fairness of the trial proceedings. If either occurred, or if one is left in grave doubt about the matter, the conviction should not stand. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *People v. Wright,* 182 Colo. 87, 511 P.2d 460 (1973); *People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (1973); *People v. Walker, supra.*

I cannot say, with fair assurance, that the defendant's conviction of first-degree murder was not to a substantial degree related to the prosecutor's totally unjustifiable invocation of revenge or retribution as a basis for the jury's verdict. Accordingly, I would reverse and remand for a new trial.

I am authorized to say that JUSTICE ERICKSON and JUSTICE DUBOFSKY join me in this dissent.